

**ORDERED in the Southern District of Florida on January 25, 2013.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    CASE NO. 12-26067-AJC
                                                         CHAPTER 13
CARIDAD YOLANDA LAMELAS,

                         Debtor.
_____/

**ORDER GRANTING CREDITOR BANK OF CORAL GABLES, LLC RELIEF FROM
THE AUTOMATIC STAY**

THIS CAUSE came before this Court for hearing on September 25, 2012 upon Creditor

Bank of Coral Gables, LLC's Motion for Relief from Automatic Stay or in the Alternative for

Adequate Protection (D.E. 32).[1]  The Court, having considered the pleadings, the stipulations of

the parties, the documents upon which the parties rely, and applicable law, grants stay relief.

---

[1] This case also came before the Court for hearing on November 28, 2012 upon Creditor Bank of Coral Gables,
LLC's Motion to Restrict the Debtor's Use of Cash Collateral (D.E. 75) and the Debtor's Amended Motion for Use
of Cash Collateral (D.E. 87).  However, because this Order determines stay relief to be appropriate, the Court
abstains from ruling on the cash collateral motions pending the outcome of the foreclosure action in state court.

## <u>UNDISPUTED FACTS AND PROCEDURAL HISTORY</u>

On June 29, 2012, Caridad Yolanda Lamelas (the "Debtor") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.  The Debtor owns 100% of the stock of Yolafer, Inc. ("Yolafer" or the "Borrower").  *See* Debtor's Schedule B at D.E. 36.  Prior to the Debtor's bankruptcy filing, Yolafer obtained a loan from the Bank of Coral Gables, LLC (hereinafter, the "Bank of Coral Gables" or "Bank"), in the original principal amount of $350,000.00 (the "Loan").

In furtherance of the Loan, Yolafer executed and delivered to the Bank of Coral Gables a promissory note (the "Note") and a mortgage (the "Mortgage") pledging commercial property as security for repayment of the Note.  The Mortgage was duly recorded in the public records of Miami-Dade County, Florida and encumbers property located at 1037 W 29 Street, Hialeah, FL 33012 (the "Property").

As further security for repayment of the Note, the Debtor and Carlos Eduardo Ramos both executed commercial guaranties in favor of the Bank of Coral Gables.  Additionally, Yolafer executed and delivered an Assignment of Rents to the Bank, which was recorded on July 14, 2008 in the public records of Miami-Dade County, Florida.

Yolafer defaulted under the terms of the Note and Mortgage when it failed to make payment due to the Bank of Coral Gables on September 1, 2011 and all subsequent payments. On March 16, 2012, as a result of Yolafer's default, the Bank of Coral Gables filed a foreclosure action against Yolafer, the Debtor and Ramos.  On March 16, 2012, the Bank filed a Verified Motion for Order Sequestering the Rents to enforce its Assignment of Rents.

On May 2, 2012, the trial court continued the hearing on the Bank's Verified Motion for Order Sequestering the Rents until May 30, 2012, but the May 30, 2012 hearing had to be cancelled and re-set.

On June 29, 2012, two (2) hours before the Debtor filed her bankruptcy petition, the Property was conveyed from Yolafer to the Debtor via a quitclaim deed. The quitclaim deed, which was signed by the Debtor in her capacity as Vice President of Yolafer, was executed and recorded on June 29, 2012.

As a result of the Debtor's bankruptcy filing, the foreclosure action was stayed and the continued hearing on the Bank's Verified Motion for Order Sequestering the Rents never went forward.

On September 20, 2012, the Debtor filed her Third Amended Chapter 13 Plan (the "Plan") (D.E. 50). The Plan purports to cure Yolafer's default under the Loan over a period of five (5) years. According to the Plan, the purported amount in arrears on the Loan as of the petition date totals approximately $30,000.00. The Debtor proposes to make payments for the first five (5) months of $300.00, followed by payments for the next fifty-five (55) months in the amount of $518.18. The Plan also provides for maintenance payments to the Bank in the amount of $2,500.00 for a period of five (5) years.

The Bank of Coral Gables maintains that the pre-petition arrearage amount totals $74,232.37. This includes payment arrearages totaling $60,356.30, $8,868.00 in attorneys' fees and costs incurred in the foreclosure action up until the petition date, late fees in the amount of $1,236.70[2] and expenses in the amount of $3,771.37.[3]

---

[2] The late fee of $1,236.70 is included in the Debtor's pre-petition arrearage calculation.
[3] The expenses include $2,900.00 incurred by the Bank for an appraisal and $871.37 for the Bank's payment of force placed insurance on the Property.

The Bank filed objections to the Debtor's First Amended Chapter 13 Plan and Second Amended Chapter 13 Plan, both of which proposed the same payments to the Bank of Coral Gables as under the current Plan. *See* D.E. 27 and D.E. 40.

Pursuant to the Debtor's Schedule A, and the records of the Miami-Dade County Property Appraiser, the value of the Property is, at most, approximately $354,382.00. *See* Debtor's Schedule A at D.E. 1. And while the Debtor and the Bank disagree over the total debt amount due to the Bank, it is undisputed that the Yolafer debt (which the Debtor guaranteed) exceeds the value of the Property. The fact is, there is no equity in the Property.

The Bank filed its Motion on September 7, 2012. At the hearing on the Motion, the Debtor and the Bank disagreed over the manner in which the pre-petition arrearage amount should be calculated. The Debtor maintains that the pre-petition arrearage amount should be calculated according to the non-default rate of interest provided in the Note (the "Note Rate"). The Bank, on the other hand, maintains that the pre-petition arrearage amount should be calculated at the 18% default rate of interest provided in the Note (the "Default Rate").

Based upon its calculation of amounts due, inclusive of interest at the Default Rate, the Bank seeks relief from the stay, asserting the Debtor cannot afford the payments under her Plan and therefore cannot propose a realistically possible plan to accomplish an effective reorganization. Section 362(d) of the Bankruptcy Code provides the court with two grounds under which to grant relief from the automatic stay: (1) for cause, including the lack of adequate protection, or (2) with respect to a stay of an act against property, if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. Under 11 U.S.C. §362(g), the party seeking relief from stay has the burden of proof as to the issue of the debtor's equity in the property. The party opposing the relief has the burden on all other issues.

11 U.S.C. §362(g); *see In re Shelby*, 127 B.R. 682, 695 (Bankr. N.D. Ala. 1991). "Whether cause exists to lift the stay must be determined on a case by case basis based upon the totality of the circumstances in each particular case." *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006). The totality of the circumstances includes how the parties have conducted themselves, the debtor's motives and whether the debtor has acted in good faith. *Id.*

As the party seeking relief from the automatic stay, the Bank has the burden of proof on the issue of the Debtor's equity in the Property. 11 U.S.C. § 362(g). This issue, however, is not in dispute as the parties agree that there is no equity in the Property due to the fact the debt amount exceeds the value of the Property. See Debtor's Schedule A at D.E. 1. The burden then shifts to the Debtor to prove that the Property is necessary for an effective reorganization. *See In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004). This has been interpreted by the courts to mean that the Debtor must prove that there is a reasonable possibility of a successful reorganization within a reasonable time. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988).

## ANALYSIS AND CONCLUSIONS OF LAW

The Court believes interest at the Default Rate is due under the Loan such that it must be included in the Plan's calculation of amount necessary to cure the default under the Mortgage. Having included that amount, the Court believes the Debtor does not have a reasonable possibility of a successful reorganization and is persuaded that stay relief is warranted under 11 U.S.C. §362(d). Finally, if the Debtor can prove she can afford to cure Yolafer's default in her Chapter 13 Plan given the calculation of interest at the Default Rate, then the Court will reconsider, upon the filing of a proper and timely motion, whether this Debtor may be given the

opportunity to cure even though she is not the primary obligor under the Note or the mortgagor under the Mortgage.

A.    **Pre-Petition Arrearage Calculation**

Although the Bank maintains the Debtor cannot cure the default of Yolafer, the obligor on the Loan, it asserts that even if she were allowed, the Debtor could not afford to pay the Bank default interest. The Bank maintains that default interest must be included based upon section 1322(e) of the Bankruptcy Code and the terms of the Note.  The Debtor disagrees.

As provided in section 1322(b)(5), a Chapter 13 plan may provide for "the curing of any default within a reasonable time and maintenance payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due."[4]  *See also* 11 U.S.C. 1322(b)(3) (Chapter 13 plan may "provide for the curing or waiving of any default").  Prior to the enactment of section 1322(e) by the Bankruptcy Reform Act of 1994, the Bankruptcy Code did not address the amount required to cure a default under a Chapter 13 plan.  *See In re Abejobi*, 404 B.R. 78, 80 (Bankr. E.D.N.Y. 2009).  Section 1322(e), however, filled the gap by providing guidance for the manner in which to calculate the arrearage amount.  More specifically, section 1322(e) states that for plans proposing to cure a default, "the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  The same language was added to section 1123 of the Bankruptcy Code to address the amount necessary to cure a default under a Chapter 11 plan.

It is undisputed that Yolafer defaulted on the Loan from the Bank of Coral Gables when it failed to make the payment owed on September 1, 2011 and all subsequent payments. The Note specifically provides that upon default, "the interest rate shall be increased to 18% per

---

[4] The subject Note does not mature until August 1, 2018, which is after the date on which the final payment under the Plan is due.

annum." *See* Exhibit A at D.E. 32.  The Note further provides that the Bank is entitled to late charges if payment is ten (10) days or more late, plus attorneys' fees, costs and expenses incurred in connection with efforts to collect on the Note.  *Id.* The Debtor has not raised any issues regarding the enforceability of these provisions.

The parties do not dispute the fact that the amount to cure the default should include the pre-petition attorneys' fees and costs incurred by the Bank.  The parties do however disagree as to whether the amount necessary to cure the default should be calculated using the Note Rate[5] or the Default Rate. The Bank maintains that in accordance with the underlying loan documents, the arrearage amount must be calculated using the Default Rate as set forth in the Note, and the payment arrearage at the Default Rate, without taking into account attorneys' fees, costs, late fees and expenses, totals $60,356.30.

Because the Court believes the arrearage amount should be calculated pursuant to the terms of the underlying loan documents, it is persuaded such arrearage amount should include interest calculated at the Default Rate.  With the enactment of 11 U.S.C. §1322(e), courts are no longer left to grapple over the meaning of "cure" in the bankruptcy statutes.

> Under section 1322(e), the amount necessary to cure a default is the same as would be required to cure if the debtor were not in bankruptcy.  Two conditions must be met before interest and other charges can be required as part of a bankruptcy cure. First, the interest or charges must be required under the original agreement, and second, they cannot be prohibited by state law.

*Adejobi*, 404 B.R. at 80-81 (citing Collier on Bankruptcy, § 1322.18 at 1322.67 (Alan N. Resnick et al., 15th ed. rev.2006)).  Courts interpreting sections 1322(e) and 1123(d) of the Bankruptcy Code have held that a creditor is entitled to interest on its claim until the filing of a bankruptcy petition at the rate provided for under the applicable agreement between the parties.  *See Adejobi*,

---

[5] While the Debtor maintains that this amount totals $30,000.00, according to the Bank, the amount owed as of the petition date using the Note Rate is $36,235.17.  Neither amount includes attorneys' fees, costs or expenses.

404 B.R. at 83 ("[t]he policy underlying section 1322(e) is that in determining the amount necessary to cure a default under a Chapter 13 plan, the equitable power of a federal court exercising bankruptcy jurisdiction may not be invoked to set aside rights vouchsafed to a secured creditor under contract and enforceable under applicable nonbankruptcy law."). *See also, In re Sagamore Partners, Ltd.*, 2012 WL 2856104 (Bankr. S.D. Fla. 2012).

Here, the Note executed by Yolafer provides that upon default, interest will be calculated at the Default Rate of 18%. Therefore, the Bank is entitled to default interest from the time of Yolafer's default up until the petition date at the Default Rate of 18%.

Additionally, the Note permits the Bank to include attorneys' fees, costs and expenses in the amount required to cure the default. Specifically, the Note states that the Bank "may hire or pay someone to help collect [on the] Note if Borrower does not pay" and that the Borrower will pay the Bank "the amount of these costs and expenses, which includes . . . reasonable attorneys' fees and [the Bank's] legal expenses . . . and any court costs, in addition to all other sums provided by law." *See* Exhibit A at D.E. 32. The Note also has a late fee provision which allows the Bank to charge a late fee if payment is ten (10) days or more late. *Id.*

Therefore, the Bank is not only entitled to the payment arrearage, inclusive of default interest, in the amount of $60,356.30, but also the attorneys' fees, costs and expenses it incurred in connection with its collection efforts, as well as any late fees that were assessed against the Borrower. This includes the $8,868.00 in attorneys' fees and costs the Bank incurred in the foreclosure action, expenses in the amount of $3,771.37 and late fees totaling $1,236.70. Thus, the amount required to be paid by the Debtor in her Chapter 13 Plan to cure Yolafer's default under the Loan is $74,232.37.

B.    **Relief from the Automatic Stay**

The Bank has requested relief from the automatic stay to proceed with its foreclosure action and its efforts to collect rents from the Property. The Bank maintains that it is entitled to relief from the automatic stay under sections 11 U.S.C. §362(d)(1) and (d)(2). The Debtor has opposed the Motion, maintaining that even though there is no equity in the Property, it is necessary for an effective reorganization. The Debtor further maintains that there is no cause to lift the stay.

### 1. *Section 362(d)(2)*

To obtain relief from the stay under the Bankruptcy Code, a debtor must have no equity in the property and the property must not be necessary to an effective reorganization. *See* 11 U.S.C. §362(d)(2). The Debtor and the Bank agree that the debt owed to the Bank exceeds the value of the Property and as a result, there is no equity in the Property. As such, the Debtor has the burden of demonstrating that the Property is necessary for an effective reorganization. *See* 11 U.S.C. §362(g)(2). In proving that property is necessary for an effective reorganization, the debtor must demonstrate that there is "a reasonable possibility of a successful reorganization within a reasonable time." *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004) (internal citations omitted). For property to be necessary for an effective reorganization, the debtor must show that reorganization is realistically possible. *See In re Bellina's Restaurants II, Inc.*, 52 B.R. 509, 512 (Bankr. S.D.Fla. 1985).

The Court concludes Debtor has failed to meet its burden of demonstrating that a successful reorganization is possible. The amount to cure the Bank's default far exceeds the amount provided for in the Debtor's Plan. The Debtor proposes to pay the Bank $30,000.00 over a period of five (5) years. The actual amount owed to the Bank as of the petition date, however, is $74,232.37. This is more than double the amount provided for in the Debtor's Plan. The

Debtor has failed to demonstrate how she will be able to make these additional payments to cure the default.   There is no indication that the Debtor has any additional sources of income that can be used to make these increased payments.  Therefore, because both conditions under Section 362(d) are met, the Bank is entitled to stay relief.

    2. *Section 362(d)(1)*

The Court also believes that grounds exist to grant the Bank stay relief under section 362(d)(1) for "cause".  The Bankruptcy Code does not define "cause" for relief, so the courts are left to make this determination on a case by case basis.  *See In re Lippolis*, 228 B.R. 106 (Bankr. E.D. Pa. 1998).   The Bank argues that cause exists to lift the stay because the Debtor's bankruptcy petition was not filed in good faith.  In support of its argument, the Bank points to the fact that the Debtor filed her petition for relief under Chapter 13 and transferred the Property to herself on the same day.  The Bank maintains that this was done for the purpose of delaying and/or preventing the Bank's foreclosure action and for purposes of allowing the Debtor to collect rents from the Property.

Relief from the automatic stay may be granted if a court determines that a bankruptcy petition was not filed in good faith.  *Id*.; *see also, In re Mack*, 347 B.R. 911, 915 (M.D. Fla. 2006) ("A debtor who does not act in good faith is not entitled to continue to enjoy the benefits, such as the automatic stay, afforded by the Bankruptcy Code.").  Here, the Debtor, the 100% shareholder of Yolafer, transferred the Property to herself two (2) hours before filing for bankruptcy.  The close proximity of the filing and transfer indeed thwarted the Bank's foreclosure efforts.  Moreover, the Debtor has apparently been collecting rents from the Property and intends to use the rents to make payments under her Plan.  However, the Bank asserts rights to the rent under an Assignment of Rents executed in favor of the Bank, and has demanded the

rents be paid to it – which request for relief was also thwarted by the bankruptcy filing. The Debtor's transfer of the Property and subsequent bankruptcy filing prevented the continued hearing on the Bank's Verified Motion for Order Sequestering the Rents from going forward. Thus, a determination of entitlement to the rent proceeds must still be made.[6] The Court believes this issue can be appropriately addressed in the state foreclosure action. In light of the foregoing, the stay should be lifted to permit the Bank to proceed with its foreclosure action, through judgment but not sale, without further order of this Court.

**C.      Can Debtor Cure Default Of Yolafer?**

Courts are split on the issue of whether the Debtor can cure the default of Yolafer. *E.g., compare In re Mitchell*, 184 B.R. 757 (C.D. Ill. 1994) *with In re Curinton*, 300 B.R. 78 (M.D. Fla. 2003). The Bank maintains that based upon the facts of the case at bar, the Court should not permit the Debtor to include the Mortgage in her Plan. However, the Court does not believe this issue is ripe for determination. Unless and until the Debtor can demonstrate she can afford to cure the Mortgage, providing for interest at the Default Rate, the Court believes this issue is premature and refrains from addressing same at this juncture. Accordingly, it is

**ORDERED AND ADJUDGED** that Bank of Coral Gables, LLC's Motion for Relief from Automatic Stay or in the Alternative for Adequate Protection (D.E. 32) is GRANTED IN PART as follows:

1.      The pre-petition arrearage amount required to cure the default under the Bank's Loan shall include interest calculated at the Default Rate of 18% as provided in the Note, and shall include pre-petition attorneys' fees, costs and expenses (which amounts appear to not be disputed), for a total cure amount of $74,232.37.

---

[6] In fact, the Bank has filed a Motion to Restrict the Debtor's Use of Cash Collateral, which is pending.

2.     The Bank of Coral Gables is GRANTED stay relief to proceed with its mortgage foreclosure action in state court against real property, including a determination of rights and entitlement to the rent proceeds from the real property, the legal description of which is described as:

> Lot 21, less the East 20 feet thereof, and all of Lot 22, Block 15, WEST HIALEAH HEIGHTS, according to the plat thereof as recorded in Plat Book 22, Page 14, of the Public Records of Miami-Dade County, Florida.

3.     This Order is entered for the purpose of allowing the Bank of Coral Gables to commence, prosecute and complete through judgment only a mortgage foreclosure against the Property; however, the Bank may not proceed to sale without further order of the Court.

4.     The relief granted by this Order is limited to *in rem* relief against this Debtor only.

5.     Pursuant to Fed.R.Bankr.P 4001(a)(3), the relief granted herein is stayed until the expiration of fourteen (14) days after entry of this Order, thereby providing the Debtor an opportunity to demonstrate to this Court, through a properly filed motion and after notice and hearing thereon, that the Debtor can afford to cure the arrearage as determined in this Order.

### ###

Submitted by:
Dennis M. Campbell, Esq.
Campbell Law Firm PLLC
Counsel for Bank of Coral Gables, LLC
95 Merrick Way, Suite 514
Miami, Florida  33134
Tel:  (305) 444-6040
Fax: (305) 444-6041
E:Mail: dcampbell@campbelllawfirm.net

Copies to:
Dennis M. Campbell (*Attorney Campbell is directed to serve a copy of this Order upon all parties in interest and to file a certificate of service*).